UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WHITE                                    CIVIL ACTION

VERSUS                                   NO: 09-2747

GOVERNMENT EMPLOYEES                     SECTION: J(4)
INSURANCE COMPANY


**ORDER AND REASONS**

Before the Court is Defendant Government Employees Insurance Company ("GEICO")'s Motion for Summary Judgment (Rec. Doc. 55), Plaintiff's Response (Rec. Doc. 66), and Defendant's Reply (Rec. Doc. 85). Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that Defendant's **Motion for Summary Judgment (Rec. Doc. 55)** should be **GRANTED**.

**PROCEDURAL HISTORY AND BACKGROUND FACTS:**

Plaintiff Tricia White ("White" or "Plaintiff"), an African American female, was hired by GEICO in 1997 as a Telephone Claims Representative Trainee in GEICO's regional office in Macon, Georgia. Her sister, Tiffany White, was also hired at the same time.  Tiffany White is not a party to this lawsuit. Tricia White remained employed by GEICO's Macon office until 2004, when she

1

was transferred to GEICO's Louisiana claims unit in Metairie and promoted to the position of Telephone Claims Representative Supervisor I.

In her complaint, White alleges that, after being transferred to the Metairie office, she began to experience unfair discriminatory treatment from her supervisors Randy Thompson and Gene Allgood. White's complaint avers that, in 2006, White was not selected for a position of the Continuing Unit Manager, despite the fact that she had the most experience with GEICO, the most experience as a supervisor, and the most education amongst all of the GEICO employees who applied for the position. Instead, Randy Thompson gave the position to Travis Bourgeois, a white male. The complaint further alleges that in September 2006, Gene Allgood became White's supervisor. According to White, Allgood's "actions and/or inactions created an environment whereby White was routinely subjected to unfair discriminatory conduct by Allgood and White's fellow co-worker's [sic]" (Rec. Doc. 20, at 4). White claims that she was the subject of a derogatory office e-mail; she was excluded from various interoffice meetings, Allgood and others used demeaning language when referring to GEICO's minority clients, employees, customers, and claimants. Tricia White and her sister Tiffany White were referred to as "the White girls," which, according to Plaintiff, "called into question the White sister's [sic] racial

2

identity or self-perception (Rec. Doc. 66, at 8).

In March 2008, White was promoted to the position of
Manager, Claims Liability (a/k/a Continuing Unit Manager) for the
Louisiana claims unit. White's complaint asserts that, after this
promotion, she would have been the next in line for consideration
for any future promotional opportunities in the Metairie office.
On May 13, 2008, GEICO provided notice that the Metairie Branch
Office would be closing and the daily operations would be
relocated to GEICO's regional office in Macon, Georgia. In June
2008, White was transferred to GEICO's Georgia unit. This
transfer did not affect White's job title, job grade, salary,
company benefits, nor did it affect her promotional opportunities
with the Company. However, she claims that as a result of the
transfer, she is now "at the bottom of the totem pole" (Rec. Doc.
20, at 5). White's complaint states that her position in the
Metairie office was filled by a white female GEICO employee.

On October 24, 2008, White submitted an Intake Questionnaire
to the Equal Employment Opportunity Commission ("EEOC") in which
she alleged race and sex discrimination and retaliation by her
employer, GEICO, as evidenced by: (1) a transfer (alleged
demotion) from GEICO's Louisiana unit to its Georgia unit in July
2008; (2) verbal abuse by a coworker in July 2008; and (3) denial
of promotions on several occasions. Further, White reported she

3

had sought help in August, 2008 from attorney G. Karl Bernard about these matters.

On November 4, 2008, GEICO received notice from the EEOC that White had filed a Charge of Discrimination for race and sex discrimination and retaliation, in violation of Title VII. The EEOC Notice provided that White's Charge alleged demotion on or about July 1, 2008. On November 13, 2008, the EEOC issued a Dismissal and Notice of Rights to White and GEICO, informing the parties that White's Charge was dismissed because the agency was unable to conclude that the information obtained established violations of the statutes. Additionally, this Notice provided White with notice of her right to sue under Title VII within 90 days of the date of receipt of the notice.

On February 11, 2009, Plaintiff filed the instant lawsuit against GEICO (Rec. Doc. 1). On July 17, 2009, Plaintiff filed her First Amended Complaint (Rec. Doc. 20). Plaintiff asserts claims under Title VII, the Louisiana Employment Discrimination Law ("LEDL"), La. Rev. Stat. Ann. § 51:2256, and other applicable laws and statutory provisions. Plaintiff asserts that, starting in 2004, she experienced "unfair discriminatory treatment" by her supervisors and coworkers (Rec. Doc. 20). Plaintiff specifically alleges that (1) Defendant failed to promote her to the position of Continuing Unit Manager in 2006; (2) she was the subject of a derogatory office e-mail; (3) she was excluded from various

interoffice meetings; (4) demeaning language about minority individuals was used in her presence by her supervisor and others; and (5) her transfer in September, 2008 as a Continuing Unit Manager in GEICO's Louisiana unit to a Continuing Unit Manager in its Georgia unit was an unlawful demotion. Plaintiff also asserts a retaliation claim. Finally, Plaintiff seeks punitive damages.

During her deposition, Plaintiff testified to additional specific incidents of alleged discrimination. First, Plaintiff testified that her former supervisor considered placing Plaintiff and her sister, Tiffany White, on a performance improvement plan due to poor audit results, while a white, female supervisor was allegedly not identified for a plan. As shown by the record evidence, this occurred on November 10, 2005. Second, Plaintiff testified that she initially applied for two positions with the Metairie branch office; however, due to a failure by her prior supervisor (Carl Tims) to approve her posting for a TCR-2 Supervisor position, she was only interviewed for a TCR-1 Supervisor position. This occurred in January 2004 when White was transferred to the Metairie office.  Third, Plaintiff testified that she was not permitted to skip levels to post for jobs, but Travis Bourgeois was allegedly allowed to skip levels when he was promoted to a TCR-2 Supervisor position in 2004. Fourth, Plaintiff testified that the Company required her to cancel her

Kentucky adjustor's license and would not pay for its renewal in June 2005. Fifth, Plaintiff testified she was required to take a test as part of the application process for a Continuing Unit Manager position in 2006. Notably, Plaintiff admitted that all applicants for the position at that time were required to take the test. Sixth, Plaintiff testified that on January 11, 2006, she was discriminated against when she requested a knife from a coworker to cut a birthday cake, and the coworker pointed the knife at her while making a joking remark. The record evidence shows this incident was promptly investigated by the branch manager. Seventh, Plaintiff testified that her supervisor, Gene Allgood, removed her sister, Tiffany White, as a peer rater on her annual 360 survey and required her to list other office supervisors on the survey as peer raters. This occurred in March 2007.

**THE PARTIES ARGUMENTS:**

**A.   Time-barred Claims**

Defendant submits that there is no genuine issue of material fact in dispute. Specifically, Defendant argues that claims by Plaintiff under Title VII that arose before the limitations period are time-barred. In Louisiana, a Title VII plaintiff must file an EEOC charge no more than 300 days after a discriminatory employment act occurs. Accordingly, Defendant asserts that Plaintiff is barred from raising discrete claims that arose

before December 30, 2007. Moreover, Defendant claims that the exception under the continuing violation doctrine does not apply to the case at bar because Plaintiff cannot meet the stringent standard under this doctrine. Thus, according to Defendant, the following claims are time-barred: failure to promote in 2006, derogatory e-mail in 2006, use of demeaning language on several occasions, and several other isolated incidents.

Plaintiff argues that the continuing violation doctrine is an exception to the statutory limitation that is applicable to the case at bar. In hostile environment claims, it does not matter that some of the component acts fall outside of the statutory time period.

Defendant also argues that White's claims under the LEDL are subject to a one-year prescriptive period, running from the date of an allegedly unlawful employment act. The LEDL provides for the suspension of this prescriptive period during an administrative review of such acts, but this suspensive period may not last longer than six months. The record evidence shows that the administrative review of White's discrimination and retaliation claims lasted for approximately 21 days. Hence, claims raised in White's EEOC Charge (i.e., failure to promote, a demotion in July 2008, and an alleged incident of verbal abuse by a coworker in July 2008) that occurred before January 21, 2008 – i.e. one year and 21 days before the filing of this action–are

time-barred. Moreover, claims not previously raised before EEOC are not suspended and the one-year prescriptive period applies. Thus, Plaintiff's claims of a derogatory e-mail and use of demeaning language that allegedly occurred in 2006 are time-barred.

Plaintiff responds that Louisiana state courts routinely consider a federal court's interpretation of federal statutes to resolve similar questions concerning Louisiana statutes and the proper burden of proof sequence. Accordingly, because Plaintiff filed her action within the time prescribed for at least one of Defendant's alleged acts of harassment, the entire scope of Plaintiff's hostile environment claim should be considered for purposes of determining whether material issues of fact exist and to demonstrate that Defendant's alleged transfer of Plaintiff was a mere pretext to mask its true motive – discrimination.

**B.   Claims Outside the Scope of an EEOC Charge**

Defendant cites jurisprudence for the proposition that the filing of a Charge of Discrimination with the EEOC is a prerequisite to filing claims under Title VII and the LEDL. Thus, a plaintiff may not raise only a few claims before the EEOC and later sue over every claim arising out of her employment. Plaintiff alleged race and sex discrimination, and retaliation to the EEOC as evidenced by (1) an alleged demotion in July 2008; (2) alleged verbal abuse by a coworker in July 2008; and (3)

8

alleged denial of promotions on several occasions. Plaintiff is barred from raising anything beyond those claims.

Plaintiff argues that the scope of the complaint is not limited by the EEOC charge, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge. According to Plaintiff, this Court should determine what would have been discovered during the course of a reasonable investigation of Plaintiff's charge because the EEOC did not conduct an investigation.

**C.   LEDL Claims Without Proper Pre-Suit Notice**

Defendant also argues that section 23:303(C) of the LEDL requires a plaintiff to provide written notice of an intent to sue under the LEDL, at least thirty days before initiating a court action. While the filing of an EEOC Charge can serve as pre-suit notice, a subsequent LEDL claim must be limited to the discrimination *detailed in* the EEOC Charge. Prior to Plaintiff's filing of the instant lawsuit, Defendant had no notice of potential state law claims under the LEDL beyond a claim for an alleged demotion. Accordingly, Plaintiff's LEDL claims should be limited to the alleged demotion in July 2008.

In response, Plaintiff reiterates that because of the commonality between federal and state anti-discrimination laws, Louisiana state courts routinely consider a federal court's interpretation of federal statutes to resolve similar questions

9

concerning Louisiana statutes. Accordingly, the scope of Plaintiff's complaint should not be limited by the EEOC charge, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge.

**D.  *Prima Facie* Case of Race and Gender Discrimination**

Defendant submits that Plaintiff cannot establish a *prima facie* case of race or gender discrimination. The alleged exclusion from meetings is not evidence of an adverse employment action. White's transfer to Georgia is not a demotion because the transfer had no effect on her job title, grade, salary, or benefits. Moreover, Plaintiff could not overcome Defendant's legitimate, non-discriminatory reasons for the transfer.

Plaintiff claims that White's transfer to Georgia did constitute a demotion. It is enough if the new position proves objectively worse--such as being less prestigious or less interesting or providing less room for advancement. White further asserts that Defendant's reason for White's transfer was a mere pretext. Defendant's conflicts policy for not having relatives working in the same department is selectively enforced.

**E.  *Prima Facie* Case of Hostile Work Environment**

Defendant argues that White cannot show that the alleged harassment affected a term, condition, or privilege of her employment, or that GEICO failed to take prompt remedial action to White's complaints. According to Defendant, evidence shows

10

that the alleged incidents were isolated events that are not
pervasive or severe enough to affect a term, condition, or
privilege of employment. Failure to satisfy these elements is
fatal to Plaintiff's claim.

Plaintiff responds that harassment at GEICO affected her
employment, pointing out that her supervisor ignored her; her
colleagues called her Sasquatch and "white girl" and repeatedly
rummaged through her files in her absence; she was not allowed to
skip levels of employment while others were; after her use of the
Ethics Line her anonymity was compromised; the conflicts policy
only applied to White; two employees who were part of White's
claims unit were fired without White's consent and two others
were "ran off"; White's peers were allowed
to rate White's job performance but White was not allowed to rate
theirs; when White asked for a slice of birthday cake, someone
made a stabbing motion toward White. When White complained,
Defendant's remedial efforts were minimal and deliberately
ineffective.

**F.   Retaliation Claims**

Defendant submits that Plaintiff's retaliation claims under
Title VII and La. Rev. Stat. Ann. § 51:2256 are legally and
factually deficient. Defendant argues that the law is clear that
section 51:2256 does not support a claim of retaliation in
employment discrimination cases. As for White's federal law

retaliation claim, Defendant asserts that White cannot establish a *prima facie* case of retaliation. Plaintiff's allegations of retaliation are solely limited to two cursory references near the end of her Complaint, in which she broadly alleges that Defendant's actions constitute unlawful retaliation. Aside from the general listing of retaliation as an alleged violation of law, Plaintiff provides no evidence to establish a *prima facie* case of retaliation under federal or state law.

Plaintiff did not respond to Defendant's motion for summary judgment on White's retaliation claims.

**G.   Claim for Punitive Damages**

Defendant contends that Plaintiff's claim for punitive damages fails as a matter of law. Plaintiff provides no actual evidence that GEICO acted with malice or reckless indifference requisite for recovery of punitive damages. The record evidence shows that GEICO has well-publicized policies, regular orientation to such policies, and established grievance procedures. Moreover, the record evidence plainly shows a consistent, good faith pattern by GEICO of investigating complaints submitted by Plaintiff to management or Human Resources officials.

Plaintiff contends that the evidence demonstrates that GEICO acted with the sort of malice and reckless indifference to White's interests as to justify and affirm Plaintiff's claim for

punitive damages.

**DISCUSSION:**

**A.     Summary Judgment Standard**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. Little, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." Delta, 530 F.3d 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" Int'l

Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." Id. at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. See Celotex, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. See id. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. See, e.g., id. at 325; Little, 37 F.3d at 1075.

**B.   Time-barred Claims**

Plaintiff does not dispute the statutory limitation periods for filing her federal and state claims. She merely argues that the continuing violation doctrine applies to the case at bar. Huckabay v. Moore, 142 F.3d 233, 238 (5th Cir. 1998). This doctrine "relieves a plaintiff of establishing that all of the complained-of conduct occurred within the actionable period if

14

the plaintiff can show a series of related acts, one or more of which falls within the limitations period." Id. (citing Messer v. Meno, 130 F.3d 130, 134 (5th Cir.1997)). The Fifth Circuit emphasized, however, that a plaintiff "must do more than show a series of unrelated and isolated instances of discrimination. She must prove a series of continuous violations constituting an organized scheme leading to a present violation." Berry v. Board of Sup'rs of LSU , 715 F.2d 971, 981 (5th Cir. 1983). "[T]he particular context of individual employment situations requires a fact-specific inquiry that cannot easily be reduced to a formula." Huckabay, 142 F.3d at 239 (citation omitted).

According to the United States Supreme Court, claims alleging a hostile work environment are "different in kind from discrete acts. Their very nature involves repeated conduct." National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (U.S. 2002). The conduct that gives rise to an actionable hostile environment claim "cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Id.

Thus, this Court will review all of White's allegations when analyzing her claim for a hostile work environment. However, where she asserts that particular discrete acts were discriminatory, such claims are time-barred. White's federal

15

claims should have been filed 300 days after a discriminatory employment act occurs. <u>Celestine v. Petroleos De Venezuella SA</u>, 266 F.3d 343, 351 (5th Cir. 2001). Thus, under federal law, Plaintiff is barred from raising discrete claims that arose before December 30, 2007 – i.e. 300 days before Plaintiff filed an EEOC Charge. Claims under the LEDL are subject to a one-year prescriptive period, running from the date of an allegedly unlawful employment act. <u>See</u> La. Rev. Stat. Ann. § 23:303(D); <u>Hannum v. New Orleans Tree Serv., Inc.</u>, No. Civ. A. 00-1766, 2000 WL 1228759, at *2 (E.D.La. Aug. 29, 2000). The LEDL provides for the suspension of this prescriptive period during an administrative review of such acts, but this suspensive period may not last longer than six months. La. R. S. § 23:303(D). Plaintiff is barred from bringing LEDL claims on any event that occurred before January 21, 2008 –one year and 21 days before the filing of this action.

Consequently, the only discrete act of alleged discrimination is White's transfer to Georgia in 2009. All the other occurrences (the derogatory e-mail; demeaning language (the use of the words "ghetto," "redneck," and "nigger"); PIP incident; failure to interview for TCR-2 Supervisor; skipping job levels; Kentucky adjuster's license removal; birthday cake/knife incident; and the 360 Survey Raters decision) will be analyzed only in the context of White's hostile environment claim.

16

C.   **Title VII Discrimination Claim**

Title VII provides, in relevant part, that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color..." 42 USC § 2000e-2(a). In order to prevail on a Title VII race discrimination  claim the plaintiff must show that she was treated in a manner which "but for" race, would have been different. City of Los Angeles Dept. of Water and Power v. Manhart, 435 U.S. 702, 711 (1978). Title VII claims are reviewed under the framework promulgated by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), and its progeny. In order to show discriminatory treatment, Plaintiff must first present a *prima facie* case of discrimination by the preponderance of the evidence to establish that he (1) is a member of a protected class, (2) was qualified for his position, (3) suffered an adverse employment action, and (4) was replaced by someone outside of the protected class. Id.

Once a *prima facie* case has been established, Defendant then has the burden of articulating a "legitimate, nondiscriminatory reason" for the adverse employment action. Auguster v. Vermilion Parish Sch. Bd., 249 F.3d 400, 402 (5th Cir. 2001). If Defendant carries this burden, Plaintiff must present evidence which proves

17

"by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981) (citation omitted). In this regard, Plaintiff need not prove the falsity of the proffered reasons but rather only demonstrate that Defendant's "explanation is unworthy of credence." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000) (citation omitted). "If Plaintiff can show that the proffered explanation is merely pretextual, that showing, when coupled with the *prima facie* case, will usually be sufficient to survive summary judgment." Auguster, 249 F.3d at 402.

Having reviewed the evidence, the Court concludes that Defendant is entitled to summary judgment on the issue of racial discrimination because Plaintiff cannot establish a *prima facie* case of such discrimination. To prevail, Plaintiff would have to show that she suffered an adverse employment action. McDonald Douglas Corp., 411 U.S. at 802. Under Title VII, an employment transfer qualifies as an "adverse employment action" if the change makes the job "objectively worse." Pegram v. Honeywell, Inc., 361 F.3d 272, 283 (5th Cir. 2004) (citing Hunt v. Rapides Healthcare Sys. LLC, 277 F.3d 757, 770 (5th Cir.2001). "[W]here the evidence produces no objective showing of a loss in compensation, duties, or benefits, but rather solely establishes

18

that a plaintiff was transferred from a prestigious and desirable position to another position, that evidence is insufficient to establish an adverse employment action." <u>Pegram</u>, 361 F.3d at 283 (citing <u>Serna v. City of San Antonio</u>, 244 F.3d 479, 485 (5th Cir.2001)). Plaintiff cites one case to support her contention that the transfer "need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse--such as being less prestigious or less interesting or providing less room for advancement." Rec. Doc. 66, at 17 (citing <u>Sharp v. City of Houston</u>, 164 F.3d 923, 933 (5th Cir. 1996) (citations omitted)). This case, while addressing what is an adverse action in the context of a retaliation claim, emphasized nonetheless that the transfer must be *objectively* viewed as a demotion to qualify as an adverse action. <u>Sharp</u>, 164 F.3d at 933.

Plaintiff contends that her transfer in July 2008 as a Continuing Unit Manager in the Louisiana claims unit to a Continuing Unit Manager in the Georgia claims unit was a demotion. Plaintiff's *prima facie* case fails, however, because she has not and cannot objectively show an adverse employment action. Despite Plaintiff's subjective assertion, the case evidence demonstrates that no demotion took place. First, Plaintiff's transfer from the Louisiana to the Georgia claims unit was a section change only. Second, the transfer did not

19

result in any change to her job title, job grade, salary, or company benefits. Third, the transfer did not involve a significant change in job responsibilities or promotion opportunities. Finally, Plaintiff's spectrum of responsibility was actually expanded: she now has the opportunity to manage claims in multiple states, and in fact, assumed responsibility for Alabama claims in February, 2010. Aside from an unsubstantiated allegation that her transfer resulted in a loss of seniority and promotion opportunities, Plaintiff provides no objective evidence that her transfer was a demotion or punishment, or made with any accompanying reprimand.

Accordingly, Plaintiff has not carried her *prima facie* burden, and dismissal of her race discrimination claim is warranted. Defendant has met its burden in showing that Plaintiff's evidence insufficient with respect to an essential element of her discrimination claim.

**D.   Title VII Hostile Work Environment Claim**

In analyzing claims alleging a racially hostile working environment, courts must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir.2002) (citation omitted). Only when the workplace is

"permeated with 'discriminatory intimidation, ridicule and insult' that is 'sufficiently severe or pervasive to alter the conditions the victim's employment and create an abusive working environment,' Title VII is violated." <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 116 (2002) (citing <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21 (1993)). Conduct "that is not severe or pervasive enough to create an objective hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive–is beyond Title VII's purview." <u>Harris</u>, 510 U.S. at 21.

The Fifth Circuit has noted that general allegations of discrimination or harassment should not be considered; instead, a court should only consider the specific allegations of the Plaintiff. <u>Mosley v. Marion County, Miss.</u>, No. 04-60192, 2004 WL 2244260, at *1 (5th Cir. Oct. 5, 2004) (refusing to consider general allegations of discrimination); <u>Wallace v. Texas Tech.Univ.</u>, 80 F.3d 1042, 1049 (5th Cir. 1996) (general allegation of racist remarks insufficient to establish *prima facie* claim of hostile work environment). Title VII does not forbid "all verbal or physical harassment in the workplace"; it targets only discrimination because of plaintiff's protected status." <u>Williams v. Gonzales</u>, No. Civ. A. 104CV342, 2005 WL 3447885, at *15 (E.D. Tex. Dec. 14, 2005) (citation omitted). Plaintiff must show that "but for" her race or gender, she would

have experienced a different workplace. <u>Merriell v. Slater</u>, No.
Civ.A. 97-0800, 1998 WL 88857, at *5 (E.D.La. Feb. 27, 1998).

In the instant case, Plaintiff generally alleges her
supervisor created a work environment through his actions and
inactions that "routinely" subjected her to "unfair
discriminatory conduct" (Rec. Doc. 20). Specifically, Plaintiff
cites to the following instances to support her claim: (1) a
derogatory e-mail by a coworker; (2) exclusion from interoffice
meetings; (3) use of demeaning language regarding minority
individuals; (4) a failure to promote in 2006; (5) an alleged
demotion; (6) denial of Plaintiff's request to maintain her
Kentucky license; (7) changing employee raters on Plaintiff's
annual 360 survey; (8) incident in which a coworker allegedly
slammed the phone down on Plaintiff; (9) a supervisor e-mail
regarding company procedures on documenting claims handling; and
(10) an incident of verbal abuse by a coworker.

Defendant's memorandum correctly points out that, with the
exception of the allegation of the use of demeaning language,
there is no evidence that Plaintiff was subjected to harassment
because of her race or gender. Indeed, Plaintiff expressly
testified that she viewed the allegedly derogatory e-mail on
September 22, 2006 as a "ridicule of [her] management style," and
she did not see any "explicit" racial or sexual statements in the
e-mail. Further, in regards to the incident of alleged verbal

assault by coworker, Travis Bourgeois, Plaintiff's recent deposition testimony and her contemporaneous e-mail to herself at the time admit the exchange was work-related. Thus, even though the remaining challenged employment acts may have been offensive to Plaintiff, there is simply no indication that these allegedly harassing incidents were based on Plaintiff's race or gender.

As for Plaintiff's complaint about the use of "demeaning language," Plaintiff has testified that this allegation involves the following incidents by her supervisor, Gene Allgood: (1) general allegation of the use of the words "ghetto" and "redneck"; (2) alleged incident on August 24, 2007 of the use of the word "nigger" in reference to a minority claimant; and (3) an incident before March 2008 of an alleged racially insensitive comment to employee, Cynthia Johnson. These incidents, while clearly offensive, at most, reveal only isolated occurrences of alleged racial harassment. Moreover, the record evidence also shows that the two specific incidents (i.e., August 24, 2007 incident, and Cynthia Johnson incident) were investigated by GEICO. The jurisprudence is clear that isolated incidents of alleged use of a racial slur fall short of the U.S. Supreme Court's dictate that the evidence must objectively show that a reasonable person would have found the GEICO workplace to be racially hostile or abusive. See, e.g., Harris v. Forklift Sys. Inc., 510 U.S. 17, 21-22 (1993). This Court previously summarized

several decisions reviewing claims for a hostile environment:

> [I]n Vaughn v. Pool Offshore Co., 683 F.2d 922 (5th
> Cir.1982), the Fifth Circuit did not find a hostile
> work environment where plaintiff was directly called
> racial epithets by coworkers. Similarly, in Grant v.
> UOP, Inc., 972 F.Supp. 1042 (W.D.La.1996), aff'd, 122
> F.3d 1066 (5th Cir.1997), the court held that five
> separate utterances of the word "nigger" directly to
> the plaintiff were insufficient to establish a hostile
> work environment claim. See also, Smith v. Beverly
> Health and Rehabilitation Serv., Inc., 978 F.Supp. 1116
> (N.D.Ga.1997) (holding that a several utterances of
> racial epithets by a supervisor were insufficient to
> support hostile work environment claim); McCray v. DPC
> Indus., Inc., 942 F.Supp. 288 (E.D.Tex.1996) (holding
> that five uses of the terms "black Yankee" and "son,"
> two racial jokes, and the use of the word "nigger" were
> insufficient to establish a hostile work environment
> claim).

Hardy v. Federal Exp. Corp., No. Civ. A. 97-1620, 1998 WL 419716, *9 (E.D.La. 1998). Thus, while it is reasonable that Plaintiff was offended because Allgood had allegedly used a racial slur, it is not reasonable that these isolated incidents were severe or

pervasive enough to support a claim of racial harassment, much less to interfere with Plaintiff's work performance at GEICO.

In sum, even if this Court were to assume that none of Plaintiff's claims were barred by failure to exhaust her EEOC remedies or due to statute of limitations or failure to provide notice, Defendant is entitled to summary judgment because there is not enough evidence in the record to establish that a reasonable person would find the environment at GEICO to be hostile or abusive. Plaintiff complains of several isolated incidents taking place over several years, some of which are undoubtedly offensive. And yet it does not appear to the Court that they were sufficiently severe or pervasive to alter the conditions of the White's employment and create an abusive working environment. Moreover, with the exception of the allegation of the use of demeaning language, the remaining allegations do not reveal that Plaintiff was subjected to harassment because of her race or gender. Thus, Defendant met its burden on this motion for summary judgment in showing that there is insufficient evidence to establish a *prima facie* claim of a hostile environment.

**E.    LEDL Claims**

Under Louisiana law, it is unlawful for an employer to "[i]ntentionally fail or refuse to hire or to discharge any individual, or otherwise to intentionally discriminate against

any individual with respect to his compensation, or his terms,
conditions, or privileges of employment, because of the
individual's race, color, religion, sex, or national origin." La.
Rev. Stat. Ann. § 23:332 A(1). As Plaintiff correctly notes in
her response memorandum, because of the "commonality between
federal and state anti-discrimination laws," Louisiana state
courts routinely "consider a federal court's interpretation of
federal statutes to resolve similar questions concerning
Louisiana statutes." <u>Baldwin v. Board of Sup'rs for University of
Louisiana System</u>, 2006-0961 , 6 (La. App.1 Cir. 5/4/07), 961
So.2d 418, 422. Applying the federal Title VII framework analysis
yields the same result, thus making summary judgment in favor of
Defendant appropriate.

**F.   Title VII Retaliation Claim**

Title VII makes it unlawful for an employer to discriminate
against any of his employee because such employee has "opposed
any practice made an unlawful employment practice by this
subchapter, or because he has made a charge, testified, assisted,
or participated in any manner in an investigation, proceeding, or
hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To
establish a *prima facie* case of illegal retaliation, Plaintiff
must show that (1) he engaged in protected activity; (2) he was
subject to an adverse employment action; and (3) a causal

26

connection existed between the protected activity and the employment action. <u>Garza v. Laredo Independent School Dist</u>., No. 08-40387, 309 Fed.Appx. 806, 810 (5th Cir. Jan. 30, 2009).

Defendant correctly points out in its memorandum that Plaintiff has not provided any evidence to prove her retaliation claim. In fact, Plaintiff's response does not address the issue at all. Accordingly, Defendant is entitled to summary judgment on Plaintiff's retaliation claims.

**G.    Punitive Damages**

Because the Court finds that there are not enough facts in the record to establish that discrimination existed, Defendant, *a fortiori*, is not liable for punitive damages.

For the foregoing reasons IT IS ORDERED that Defendant's **Motion for Summary Judgment (Rec. Doc. 55)** is **GRANTED**, dismissing all of Plaintiff's claims with prejudice**.**

New Orleans, Louisiana this 4th day of October, 2010.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE